UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| TERRAN DALE O'NEAL, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 11 C 2550 |
| SUPERINTENDANT REYES, | ) | |
| THOMAS DART, DANIEL BROWN, | ) | |
| JOHN MUELLER, and | ) | |
| SALVADOR GODINEZ, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of Defendants Thomas Dart ("Dart"), Mario Reyes ("Reyes"), Daniel Brown ("Brown"), John Mueller ("Mueller"), and Salvador Godinez ("Godinez") (collectively, "Defendants") for summary judgment. For the reasons stated herein, Defendants' motion is granted.

## BACKGROUND[1]

Plaintiff Terran Dale O'Neal ("O'Neal") was a pretrial detainee at the Cook County Department of Corrections ("DOC") from October 4, 2009 until January 11,

---

[1] O'Neal failed to properly respond to PNC's Statement of Material Facts as required by Local Rule 56.1(b). Therefore, all well-supported facts as set forth in Defendants' Statement of Material Facts are deemed admitted. N.D. Ill. L.R. 56.1(b)(3)(C); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

2010 and again from April 10, 2010 until June 24, 2010. At all relevant times, Defendants Reyes, Godinez, and Brown held supervisory positions at the DOC. Defendant Dart is the Sheriff of Cook County, and Defendant Mueller is the Programs Coordinator of Program Services at the Cook County Department of ReEntry and Diversion Programs.

On October 4, 2009, O'Neal was admitted to the DOC and assigned to a segregation tier of Division 9. The tier was known as the "knife deck" because, according to O'Neal, "either you're getting stabbed or you're carrying something so you can stab somebody." O'Neal never requested to be transferred from the segregation tier and did not request to be placed in protective custody.

On October 8, 2009, O'Neal was in his cell when another inmate squired urine and feces into O'Neal's cell with a shampoo bottle through an opening in the door. O'Neal was struck in the head, neck, and back with the urine and feces. O'Neal attempted to block the inmate from squirting more urine and feces through the door opening, when the inmate stabbed plaintiff in the palm of his hand. Immediately after the incident, O'Neal was taken to the emergency room and treated with stitches and pain medication. O'Neal returned to his cell, and within a couple of hours the cell was cleaned. After the incident, prison officials placed O'Neal in protective custody, though O'Neal did not request that they do so.

In November or December 2009, O'Neal was attacked by another inmate who used a shampoo bottle to squirt urine and feces through his cell door. O'Neal did not request medical attention, and the attacker later returned to apologize and clean the cell. O'Neal did not require immediate medical attention after this incident. Eventually, O'Neal worried that he may have contracted a disease as a result of the incidents because of a persistent "runny nose," though all subsequent medical tests were negative.

O'Neal contends that an unnamed tier officer orchestrated the second incident and that an unidentified guard purposely left his post so that the attacking inmate had enough time to "come and do what he wanted." Prior to the second incident, O'Neal maintains that he saw a bottle of urine outside of his cell and asked an unidentified officer to remove the bottle, though the officer never did.

O'Neal filed a grievance with prison administration on September 17, 2010, over eleven months after the initial attack and nine months after the second attack. The grievance was denied as untimely. The DOC's Grievance Procedure, available to all inmates, provides that a grievance must be properly filed within fifteen days after the alleged offense.

On June 7, 2011, O'Neal filed a complaint alleging violations of 42 U.S.C. § 1983. In particular, O'Neal maintains that Defendants were deliberately indifferent

to a serious risk to his safety, and that they violated his due process rights.[2] Defendants now move for summary judgment on each of O'Neal's claims.

**LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Winsley v. Cook Cnty.*, 563 F.3d 598, 602-03 (7th Cir. 2009). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party. *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). A non-movant's failure to respond to a motion for summary judgment does not automatically result in a judgment for the movant. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Rather, the ultimate burden of persuasion remains with the movant to show that it is entitled to judgment as a matter of law. *Id.* In considering a motion for summary judgment, a court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2010).

---

[2] In his complaint, O'Neal characterizes his claims as "negligence" and "defamation of character." However, the substance of the complaint and O'Neal's response to Defendants' motion for summary judgment clearly indicate that O'Neal intended to assert claims under Section 1983 for deliberate indifference and due process violations.

## DISCUSSION

I. **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1965 ("PLRA") requires that a prisoner exhaust his administrative remedies prior to filing a lawsuit under Section 1983. 42 U.S.C. § 1997e(a). A prisoner is deemed to have exhausted his administrative remedies by filing "a timely grievance utilizing the procedures and rules of the state's prison grievance process." *Maddox v. Love*, 655 F.3d 709, 720-21 (7th Cir. 2011) (citing *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006)). The procedures which a prisoner must follow to properly exhaust his administrative remedies are defined by the prison grievance process, not the PLRA. *Maddox*, 655 F.3d at 721 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

The DOC's Grievance Procedure provides that a grievance must be filed within fifteen days after the alleged offense. The two incidents giving rise to O'Neal's lawsuit occurred between October and December 2009, yet O'Neal did not file his first grievance until September 2010, over eleven months after the first incident and nine months after the second attack. O'Neal maintains that he was unaware of the grievance procedures at the DOC. However, it is undisputed that the grievance procedure was available to O'Neal, and there are no allegations that prison officials engaged in affirmative misconduct to deprive O'Neal of the grievance process. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (stating that "a remedy becomes

'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting"). Therefore, O'Neal's unfamiliarity with the DOC's Grievance Procedure does not excuse his failure to exhaust his administrative remedies, and Defendants are entitled to summary judgment for this reason alone.

## II. O'Neal's Substantive Arguments

Even if O'Neal's suit was not procedurally defective, his remaining claims would not survive summary judgment on their merits. O'Neal alleges that Defendants were deliberately indifferent to a serious risk to his safety in both their individual and official capacities, and that Defendants violated his due process rights by placing him in the segregation tier.

### A. Deliberate Indifference– Individual Capacity Claims

O'Neal maintains that Defendants were deliberately indifferent to a serious risk to his safety. To succeed on a claim of deliberate indifference, O'Neal must establish that Defendants "knew of a substantial risk of serious injury to him and failed to protect him from that danger." *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). However, "a general risk of violence in a maximum security unit does not by itself establish knowledge of a substantial risk of harm." *Id.* (citation omitted).

O'Neal has failed to create a genuine issue of fact regarding whether Defendants had knowledge of a threat to his safety. Prior to the first incident, O'Neal had not made any specific complaints to any prison officials regarding a fear of attack. Even after the first incident, O'Neal did not request that he be transferred to another unit or placed in protective custody. Nor did he otherwise apprise Defendants that he perceived a risk of a subsequent attack.

O'Neal nevertheless alleges a conspiracy among prison officials to facilitate the second attack. He maintains that an unidentified officer ignored his requests to remove a bottle of urine on the floor outside of O'Neal's cell prior to the second attack, suggesting that this officer was aware of the impending attack. To establish Defendants' personal liability, O'Neal must show that Defendants were personally involved in the alleged constitutional violation. *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (citation omitted). O'Neal admitted that he never told any of the Defendants about his problems at the DOC, and the unidentified officer who allegedly ignored his requests to remove the bottle of urine is not a defendant in this lawsuit. As Defendants have established that they lacked personal knowledge of a threat to O'Neal's safety, they are entitled to summary judgment on O'Neal's individual capacity claims.

### B. Deliberate Indifference– Official Capacity Claims

O'Neal also maintains that Defendants should be held liable in their official capacity. Claims brought against prison employees in their official capacities are actually claims against the governmental entity for which they are employed. *Minix*, 597 F.3d at 831 (citing *Ky. v. Graham*, 473 U.S. 159, 165-66 (1985)). O'Neal's official capacity claims are therefore actually claims against the DOC.

The DOC can only be held liable if O'Neal can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 693 (1978). A plaintiff may demonstrate the existence of an official policy, custom, or practice in any of three ways: (1) identifying an express policy that causes the constitutional deprivation; (2) establishing a widespread, permanent, and well-settled practice; or (3) alleging that final policy-makers caused the constitutional injury. *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (citation omitted). O'Neal has not identified an express policy of the DOC that empowers inmates to attack each other. Nor has he established that there is any widespread practice of allowing the alleged violations. Although he maintains that his attack was not an isolated incident and that he personally knows of other incidents where inmates were attacked, he has not identified any such instances. In establishing the DOC's liability, "proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate

indifference." *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003) (citation omitted). The record is bereft of any evidence of attacks other than those inflicted on O'Neal. Finally, O'Neal has failed to allege that any final policy-makers condoned the attacks. As O'Neal has not offered any evidence to support his allegations that the DOC maintains an official policy, custom, or practice of condoning inmate attacks, Defendants' motion for summary judgment on O'Neal's official capacity claims is granted.

### C.     Due Process Claims

In his response to Defendants' motion for summary judgment, O'Neal asserts that his placement in the segregation tier of Division 9 violated his due process rights under the Fourteenth Amendment. O'Neal is correct that a pretrial detainee may not be punished without due process protections. *Rapier v. Harris*, 172 F.3d 999, 1004-05 (7th Cir. 1999) (citations omitted). Additionally, O'Neal points to the DOC's Rules and Regulations for Detainees, which state that an inmate is entitled to due process procedures when he is placed in disciplinary segregation. However, O'Neal has not alleged that he was placed in segregation as a disciplinary measure, and any such allegation would be belied by the fact that O'Neal was placed in the segregation tier upon his arrival at the DOC. The government may take measures that are reasonably calculated to effectuate the pretrial detention, *id.* at 1003, and O'Neal has failed to allege, much less demonstrate, that his placement in the segregation tier was a

disciplinary measure subject to due process requirements. Accordingly, Defendants' motion for summary judgment on O'Neal's due process claim is granted.

## CONCLUSION

In light of the foregoing, Defendants' motion for summary judgment is granted.

*/s/ Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated:   July 2, 2012